UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

UNITED STATES OF AMERICA                                 :
                                                         :
   -against-                                        :   Hon. Jed S. Rakoff
                                                         :
MONZER AL KASSAR,                                        :   S3 07 Cr. 354 (JSR)
TAREQ MOUSA AL GHAZI, and                                :
LUIS FELIPE MORENO GODOY                                 :
                                                         :
                                                         :
               Defendants.                     :
                                                         :
----------------------------------------------------------------- X


**MEMORANDUM OF LAW OF DEFENDANT MONZER AL KASSAR IN**
**SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT AND OTHER RELIEF**

**DICKSTEIN SHAPIRO, LLP**
Ira Lee Sorkin, Esq.
Nicole P. DeBello, Esq.
Elliott Z. Stein, Esq.
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212)-277-6500
Fax: (212)-277-6501
*Attorneys for Defendant Monzer Al Kassar*

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................... ii

I.    Defendant Monzer Al Kassar Should Be Permitted
      To Join In The Motions Filed by His Co-Defendants ............................................2

II.   The Indictment Should Be Dismissed Because The
      Extradition Of The Defendants Was Predicated On
      Materially False And Misleading Affidavits, In
      Violation Of Defendants' Rights To Due Process
      Under The Fifth Amendment To The U.S. Constitution.........................................2

III.  The Government Should Be Required To Identify
      "Known" Accomplices ...........................................................................................6

IV.   In Order For Defendants To Prepare Their Defense Properly,
      And In Order to Avoid Surprise At Trial, The Court
      Should Order The Government To Provide
      A Bill of Particulars As Specified Below...............................................................6

      A.    The Court Should Order A Bill of Particulars
            So Defense Counsel Can Properly Prepare For Trial...................................8

      B.    Mr. Al Kassar's Specific Requests ............................................................11

V.    The Court Should Order The Government
      To Disclose The Identity Of, And Produce For Interviews,
      The Government's Confidential Informants ..........................................................12

VI.   Al Kassar's Motion For Discovery Pursuant To
      Rule 16 Should Be Granted.................................................................................14

VII.  Surplusage .........................................................................................................17

Conclusion .................................................................................................................17

DOCSNY-318432v02

# TABLE OF AUTHORITIES

Page

## Cases

*DiBlasio v. Keane*, 932 F.2d 1038, 1041-43 (2d Cir. 1991) .................................................... 12-13

*Mathews v. United States*, 485 U.S. 58, 65-66 (1988) ...................................................7

*Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) ....................................................12

*United States v. Armstrong*, 517 U.S. 456, 463 (1996) ...................................................15

*United States v. Barnes*, 486 F.2d 776 (8th Cir. 1973) ...................................................14

*United States v. Bin Laden*, 92 F. Supp. 2d 225, 228-38 (S.D.N.Y. 2000) .............................. 7-10

*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) ........................................8

*United States v. Chovanec*, 467 F. Supp. 41, 46 (S.D.N.Y. 1979) ......................................6

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) ........................................ 7-8

*United States v. Lloyd,* 992 F.2d 348, 351 (D.C. Cir. 1993) ...........................................15

*United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) .........................................16

*United States v. Moazzam*, 1993 WL 36175 (S.D.N.Y. 1993) ........................................6

*United States v. Pilnick*, 267 F. Supp. 791, 801 (S.D.N.Y. 1967) .....................................6

*United States v. Saa*, 859 F.2d 1067, 1073-74 (2d Cir. 1988) .................................12, 14

*United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) .......................................15

*United States v. Taylor*, 707 F. Supp. 696, 700 (S.D.N.Y. 1989) .....................................6


## Constitutional Provisions, Statutes, Rules & Other Authorities

Advisory Committee Note to 1966 Amendment to
   Federal Rule of Criminal Procedure 7(f) .......................................................7

Federal Rule of Criminal Procedure 7 ..........................................................6-7

DOCSNY-318432v02

Federal Rule of Criminal Procedure 16 ................................................................. 15-16

United States Constitution, Amendment V .............................................................6

United States Constitution, Amendment VI ............................................................6

DOCSNY-318432v02

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

UNITED STATES OF AMERICA      :
     :
   -against-      :   Hon. Jed S. Rakoff
     :
MONZER AL KASSAR,      :   S3 07 Cr. 354 (JSR)
TAREQ MOUSA AL GHAZI, and      :
LUIS FELIPE MORENO GODOY      :
     :
                   Defendants.      :
---------------------------------------------------------------- X

## MEMORANDUM OF LAW OF DEFENDANT MONZER AL KASSAR IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT AND OTHER RELIEF

This Memorandum Of Law is respectfully submitted on behalf of defendant Monzer Al Kassar ("Mr. Al Kassar") in support of his motion for an order granting the following relief: (1) Permitting Mr. Al Kassar to join in the motions filed by his co-defendants; (2) Dismissing the Indictment because the extradition of the Defendants was predicated on false and misleading affidavits sworn to before this Court, in violation of Defendants' rights to due process under the Fifth Amendment to the U.S. Constitution; (3) Compelling the government to identify "known" accomplices; (4) Compelling the government to provide a Bill of Particulars as specified herein; (5) Compelling the government to disclose the identity of, and produce for interviews, its confidential informants; (6) Compelling the government, pursuant to Rule 16, to produce: (i) recordings of the February 6-7, 2007 meetings, (ii) the recording devices used by the government informants, (iii) recorded telephone conversations, and transcripts thereof, between any Defendant and third-parties, and (iv) notes of post-arrest conversations between any Defendant and United States government agents; and (7) Permitting Mr. Al Kassar to file additional,

appropriate motions. With respect to Point (2) hereinabove, we respectfully request, for the reasons set forth below and in our co-defendants' motions, a pre-trial hearing at which time we believe we will show that the government's conduct was constitutionally prohibited.

## ARGUMENT

**I.     DEFENDANT MONZER AL KASSAR SHOULD BE PERMITTED TO JOIN IN THE MOTIONS FILED BY HIS CO-DEFENDANTS.**

Given the many similarities between the cases and defenses of Mr. Al Kassar and his co-defendants, Luis Felipe Moreno Godoy and Tareq Mousa Al Ghazi, Mr. Al Kassar wishes to join in and adopt the motions filed on behalf of his co-defendants, to the extent they are consistent with his position.

**II.    THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE EXTRADITION OF THE DEFENDANTS WAS PREDICATED ON MATERIALLY FALSE AND MISLEADING AFFIDAVITS, IN VIOLATION OF DEFENDANTS' RIGHTS TO DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION.**

As discussed in the memoranda supporting the motions to dismiss filed by Mr. Al Kassar's co-defendants, this is a case in which the government egregiously overreached, created a nexus between the Defendants and the United States where none had existed before, and manufactured federal jurisdiction, all in violation of Defendants' rights to due process under the Fifth Amendment to the U.S. Constitution. Without repeating the arguments already made by Mr. Al Kassar's co-defendants, we make the additional point that the extradition of the Defendants was predicated on materially false and misleading affidavits that were sworn to by government agents before this Court.

Defense counsel have not had an opportunity to review all the transcripts (which number in the thousands of pages) in this case and have not yet heard or seen all the audio and video

recordings in the government's possession. However, relying solely on the draft transcripts produced thus far by the government, defense counsel believe that statements in the affidavits sworn to by government agents before this Court in support of the Defendants' extradition profoundly mischaracterize the conversations reflected in the transcripts.

For example, the Affidavits of DEA Special Agent William Brown in Support of Request for Extradition (hereinafter "William Brown Affidavits"), both of which were attached to the sworn affidavits of AUSA's in this case in support of extradition, contain the following material misrepresentations:

- The William Brown Affidavits represent that in a March 6, 2007 telephone conversation, the government informant[1] and Al Ghazi "talked about the need for Al Kassar to get quantities of C4 explosives for CS-1, CS-2, and the FARC." *See* Affidavit of Elliott Z. Stein in Support of Monzer Al Kassar's Motion to Dismiss the Indictment and Other Relief ("Stein Affidavit"), at ¶6a. The William Brown Affidavits further represent that the informant and Al Ghazi discussed "issues relating to the commissions both men hoped to obtain from Al Kassar as part of the deal." *Id.* However, contrary to the affidavits, the draft transcript of the March 6, 2007 phone call includes not a single mention of FARC, nor does it include any mention of commissions, and the only reference to C4 does not come close to suggesting "the need for Al Kassar to get quantities of C4 explosives." *Id.*

---

[1] The government's labeling of informants is inconsistent across affidavits. For example, in the July 17, 2007 William Brown Affidavit, the informant participating in this conversation is W-5, but in the July 24, 2007 William Brown Affidavit, the informant participating in this conversation is W-3.

- The William Brown Affidavits represent that in a phone conversation on April 18, 2007, Al Kassar and CS-1 discussed "the logistics of transporting the weapons to the FARC." *See* Stein Affidavit, at ¶6b. Aside from the fact that, according to the transcript, the purported conversation is between Al Kassar and CS-2, not CS-1, the transcript contains no reference whatsoever to FARC. *Id.*

- The William Brown Affidavits represent that in a May 9, 2007 phone conversation between CS-1 and Al Kassar, "Al Kassar also told CS-1 that FARC was not moving forward with the weapons transaction quickly enough, and that the group would soon have to make a significant payment." *See* Stein Affidavit, at ¶6c. Contrary to the affidavits, however, the transcript of that conversation contains no reference whatsoever to FARC. *Id.*

- The William Brown Affidavits represent that in a May 10, 2007 telephone conversation, "CS-1 informed Al Kassar that CS-1 and his people were having difficulty procuring another end-user certificate to list the additional weapons, including the surface-to-air missile systems, that the FARC had ordered from Al Kassar." *See* Stein Affidavit, at ¶6d. However, contrary to the affidavits, the draft transcript of the May 10, 2007 phone calls include not a single mention of FARC, nor do they include any reference to anything remotely suggesting surface-to-air missiles. *Id.*

- The William Brown Affidavits represent that in a May 20, 2007 telephone call, "CS-1 informed Moreno that the FARC had € 3.5 million that CS-1 could deliver to Al Kassar in Romania to pay for the weapons." *See* Stein Affidavit, at ¶6e.

4

Contrary to the affidavits, however, the transcript of that call contains no reference whatsoever to FARC. *Id.*

- The William Brown Affidavits represent that in a May 22, 2007 telephone call, "CS-1 told Al Kassar that the FARC had € 3.5 million Euros in Romania to provide to the weapons manufacturer" and "CS-1 also told Al Kassar that the FARC had approximately € 2 million in Greece that could be used for the weapons deal." *See* Stein Affidavit, at ¶6f. Contrary to the affidavits, however, the transcript of that call contains no reference whatsoever to FARC. *Id.*

- The William Brown Affidavits represent that in a May 25, 2007 email, "CC-1 informed Moreno and Al Kassar that their boat, the M/V Anastasia, was on the Arab blacklist, and therefore might not be available to transport the weapons to the FARC." *See* Stein Affidavit, at ¶6g. Contrary to the affidavits, however, the email contains no reference whatsoever to FARC. *Id.*

The government's mischaracterizations[2] are either grossly misleading or else suggest that there are transcripts that the government has not produced. If there are transcripts that the government has not yet produced, we respectfully request that the Court order the government to produce those transcripts and recordings immediately. However, if there are no additional transcripts and recordings, then we respectfully submit that the government has violated the Defendants' Fifth Amendment Due Process rights by submitting materially false or misleading affidavits both to this Court and the court in Spain. Given these Constitutional violations, we

---

[2] The mischaracterizations cited herein arise from an initial and incomplete review of all the transcripts. Defense counsel have yet to review all the transcripts. Nevertheless, given the number of the material mischaracterizations that defense counsel have already found, defense counsel are disturbed by the possibility that the extradition of the Defendants was predicated on materially false or misleading affidavits which were presented to this Court in support of an order extraditing the Defendants.

respectfully request that the Court dismiss the Indictment; or in the alternative, conduct a pre-trial hearing to resolve these issues.

**III.    THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY "KNOWN" ACCOMPLICES.**

In Counts One through Four, the government alleges that Defendants were acting in concert with "others known and unknown." *See* Ind. ¶¶ 10, 13 – 15, 17 – 19, 21 – 23. Defendants are entitled to know, and respectfully request the Court to order the government to furnish, the names of these "known" individuals, pursuant to Fed. R. Crim. P. 7 and the Fifth and Sixth Amendments to the United States Constitution. *See, e.g., United States v. Moazzam*, 1993 WL 36175 (S.D.N.Y. 1993) (the government concedes that defendant is entitled to "the names of all co-conspirators to the extent such persons are known to the Government") (citation omitted); *United States v. Taylor*, 707 F. Supp. 696, 700 (S.D.N.Y. 1989) (granting bill of particulars as to names of known co-conspirators, dates each joined conspiracy, and dates and locations of conspiratorial meetings); *United States v. Chovanec*, 467 F. Supp. 41, 46 (S.D.N.Y. 1979) ("the government is directed to furnish the names of those co-schemers known to them and whom they will claim participated in the alleged scheme . . ."); *United States v. Pilnick*, 267 F. Supp. 791, 801 (S.D.N.Y. 1967) ("the government shall set forth . . . the names of all co-conspirators presently known to the government and their addresses at the time of their alleged participation in the alleged conspiracy.").

**IV.    IN ORDER FOR DEFENDANTS TO PREPARE THEIR DEFENSE PROPERLY, AND IN ORDER TO AVOID SURPRISE AT TRIAL, THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS AS SPECIFIED BELOW.**

The allegations in paragraphs one through five of the Indictment highlight the likelihood, indeed near-certainty, that the government intends to introduce numerous acts that preceded the

charged conspiracies in order to show that Defendants were predisposed to commit the charged crimes. The parties agree that Defendants may raise an entrapment defense, and that the government will meet that defense with evidence that the Defendants were predisposed to commit the charged crimes.[3] *See* Defendant Godoy's Memorandum of Law in Support of Motion to Dismiss, at 22 [Dkt. 26]; *see also* Affidavit of Leslie Brown In Support of Request for Extradition, at fn. 2 (attached as Exhibit A) (hereinafter "Leslie Brown Affidavit"). In anticipation of such evidence, and to avoid surprise at trial, Defendants request, by way of a Bill of Particulars, that the government particularize all such predisposition evidence. At a minimum, the government should particularize the allegations in paragraphs one through five, much of which Defendants anticipate will constitute the government's predisposition evidence.

## Legal Standard

The general principles as to when the court should order the government to file a bill of particulars are well-settled. *See, e.g.*, *United States v. Bin Laden*, 92 F. Supp. 2d 225, 232 (S.D.N.Y. 2000). Pursuant to Fed. R. Crim. P. 7(f), the court may direct the filing of a bill of particulars upon a defendant's motion. *See* Fed. R. Crim P. 7(f). Such motion may be made before arraignment, or within 10 days after arraignment, or at such later time as the court may permit. *Id.* The rule governing issuance of a bill of particulars was amended in 1966 to eliminate any "for cause" element in order "to encourage a more liberal attitude by the courts toward bills of particulars." *See* Advisory Committee Note to 1966 Amendment to Rule 7(f). The court should order a bill of particulars if the requested information is necessary to enable a defendant to prepare for trial, and to prevent prejudicial surprise at trial. *See, e.g., United States*

---

[3] An affirmative defense of entrapment does not mean that Defendants concede that there was any conspiracy. *Mathews v. United States*, 485 U.S. 58, 65-66 (1988) (holding that a defendant may both deny the acts and other elements necessary to constitute the crime charged and at the same time claim entrapment).

*v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

**A.    The Court Should Order A Bill Of Particulars So Defense Counsel Can Properly Prepare For Trial.**

In certain cases, a bill of particulars is necessary because the government has included in its indictment vague allegations about conduct spanning many years and many countries. *See Bin Laden*, 92 F. Supp. 2d at 234.  In *Bin Laden*, defendants were charged with numerous offenses arising out of their alleged involvement in the bombings of the United States embassies in Kenya and Tanzania. *Id.* at 228-29.  The indictment alleged vague and ambiguous activity that spanned nearly ten years and locations throughout the world. *Id.* at 235.  The alleged activity included detonating explosives, training Somali rebels, transporting weapons, establishing businesses, lecturing on Islamic law, writing letters, and traveling. *Id.* Defendants requested a bill of particulars for, among other things, the allegations that were described in general terms, including the allegations related to establishing businesses and traveling. *Id.* at 235-36.  The court found that, to respond to the allegations properly, the defendants would have had to examine all activity over the 10-year period that could be the basis for the allegations of establishing businesses and traveling. *Id.* at 237-38.  Concluding that such an investigation would be unduly burdensome to the defense, the court held that a bill of particulars was necessary, and ordered the government to: set forth the dates, times and places to and from which one of the defendants allegedly traveled on behalf of Al Qaeda; identify the affiliated groups on whose behalf the defendant traveled; and, specify the exact nature of the financial or business transaction and the identity of all participants. *Id.* at 238.

Here, as in *Bin Laden*, the government has included in its Indictment "broad categories of conduct" covering many years and many countries, and that provided "too little information."

8

*Id.* at 236.  In paragraph one, for example, the government has alleged that "[s]ince in or about the early 1970's, Monzer Al Kassar . . . has been a source of weapons and military equipment for armed factions . . . in Nicaragua, Brazil, Cyprus, Bosnia, Croatia, Somalia, Iran, and Iraq, among other countries."  Ind. ¶ 1.  In paragraph two, the government has alleged that Mr. Al Kassar "has developed an international network of criminal associates, front companies, and bank accounts in, among other countries, the United Kingdom, Spain, Lebanon, Syria, Iraq, Poland, and Romania."  Ind. ¶ 2.  In paragraph three, the government alleges that Mr. Al Kassar "often obtained ostensibly legitimate end-user certificates from various countries . . . ."  Ind. ¶ 3.  In paragraphs four and five, the government makes vague allegations about defendants Al Ghazi and Godoy working with Al Kassar for 30 years and 10 years, respectively.  Ind. ¶¶ 4-5.

If it was burdensome for the defense in *Bin Laden* to investigate 10 years of vague allegations, it would be equally if not more burdensome for the defense in this case to investigate 30 years of vague allegations without a Bill of Particulars to provide some meaningful direction. In preparing for trial, in avoiding surprise, and in deciding what to investigate and, just as important, what not to investigate, defense counsel need to know whether, and to what extent, the allegations in paragraphs one through five will be part of the government's trial proof.[4]  The government has alleged conduct in more than ten countries, and defense counsel need to know if investigation is required in all those countries.  Furthermore, given the extensive time period covered, defense counsel need to have an idea of whom to interview in those countries, a task that is currently impossible given the allegations' lack of specificity as to timeframe.

---

[4] Given that paragraphs one and two have been incorporated into every Count of the Indictment, it is likely that the government intends to introduce as evidence at least some of the allegations from the opening paragraphs of the Indictment.

9

The government likely will try to distinguish *Bin Laden* on the grounds that the court in *Bin Laden* granted a bill of particulars as to overt acts, and denied a bill of particulars as to the "background" section. We respectfully submit that such a distinction is inapt here, for several reasons. First, the background section in *Bin Laden* focused primarily on background information about Al Qaeda as an organization. Here, the background section, particularly paragraphs one through five, focuses on numerous acts allegedly committed by the Defendants themselves. The background section here resembles an overt acts section in everything but name. As a result, and as the court in *Bin Laden* noted, defense counsel cannot limit their trial preparations only to the overt acts set forth in the Indictment. *Bin Laden*, 92 F. Supp. 2d at 237. Second, this is a unique case in which the parties have agreed that the defense may argue entrapment, and the government will then have the burden to prove predisposition. *See* Defendant Godoy's Memorandum of Law in Support of Motion to Dismiss, at p. 22 [Dkt. 26]; *see also* Leslie Brown Affidavit, at fn. 2 (Ex. A). The allegations in paragraphs one through five likely will constitute part of the government's predisposition evidence. To prepare a defense properly, then, defense counsel need the particulars not just of the allegations in paragraphs one through five, but of all evidence the government intends to introduce as predisposition evidence.

The government has represented that it will disclose its predisposition evidence four weeks before trial. *See* Government's Memorandum In Opposition To Defendants' Motions To Dismiss And For Other Relief, at 27 [Dkt. 31] ("Government's Opposition"). We respectfully submit that, given the high probability that the predisposition evidence will be very extensive, both in temporal and geographic scope, four weeks will not give defense counsel adequate time to investigate such evidence. Mr. Al Kassar respectfully requests that this Court order the

government to disclose, and particularize, its predisposition evidence no later than 10 weeks before trial.

### B.     Mr. Al Kassar's Specific Requests

With the above discussion in mind, Mr. Al Kassar respectfully moves the Court for an order directing the government to serve and file a Bill of Particulars of the Indictment particularly setting forth:

1.    With respect to the allegations in paragraph one of the Indictment, the name of every armed faction to which Mr. Al Kassar allegedly provided weapons and military equipment; the dates, times, and places where each such provision occurred; and, the identity of all participants involved in such provisions.

2.    With respect to the allegations in paragraph two of the Indictment, the names of all alleged "criminal associates" and "front companies;" and, account information for all bank accounts that Mr. Al Kassar is alleged to have developed or used.

3.    With respect to the allegations in paragraph three of the Indictment, the dates and certificate numbers of, and names of countries from which were obtained, the allegedly fraudulent end-user certificates.

4.    With respect to the allegations in paragraph four of the Indictment, how Al Ghazi "worked with" Al Kassar for "approximately the last 30 years;" dates, times, and places of each alleged weapons transaction; and, the identity of the "others" whom Al Ghazi allegedly advised on the logistics of purchasing weapons.

5.    With respect to the allegations in paragraph five of the Indictment, how Godoy "worked with" Al Kassar for "approximately the last 10 years;" and, bank information and account numbers for the "various bank accounts to be used to conduct weapons transactions."

6. The names of all parties, not named as defendants in the Indictment, who were parties to the conspiracies alleged in the Indictment; and, how each of these parties participated in the alleged conspiracies.

7. Any additional overt acts that could have been included in any Count of the Indictment, but were not, and about which the government intends to present evidence at trial.

8. Any and all evidence that the government intends to present as predisposition evidence at trial.

## V.    THE COURT SHOULD ORDER THE GOVERNMENT TO DISCLOSE THE IDENTITY OF, AND PRODUCE FOR INTERVIEWS, THE GOVERNMENT'S CONFIDENTIAL INFORMANTS.

If there is one thing the government and Defendants can agree on, it is the central role that the informants, who the government concedes were compensated for their services, played in the alleged conspiracies. Given the informants' role, and given Defendants' position that the government, through its informants, lured Defendants into the alleged crimes, it is vital that Defendants be given the opportunity to interview the government's informants pretrial and, if necessary, to present the informants' testimony at trial.

While the government has the privilege to withhold the identity of its informants, that privilege must give way if the disclosure of an informant's identity, or the contents of the informant's communication, is relevant and helpful to the defense. *See Roviaro v. United States*, 353 U.S. 53, 60-61 (1957); *DiBlasio v. Keane*, 932 F.2d 1038, 1041 (2d Cir. 1991) (citations omitted); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (citations omitted). Among the factors the Court must consider in determining whether disclosure is relevant to the defense are: The crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors. *See Saa*, 859 F.2d at 1073 (citations omitted). Even if the

government intends to produce an informant at trial, pretrial disclosure of the informant's identity is necessary to allow defense counsel to conduct a pretrial interview of the informant. *See id.* at 1074.

An entrapment defense is especially well-suited for granting the disclosure of an informant's identity. *See DiBlasio*, 932 F.2d at 1042-1043. In presenting an entrapment defense, testimony about events preceding and in between the charged crimes may be as material as that detailing their actual commission. *Id.* Stated more directly, an informant's testimony may disclose the entrapment. *Id.*

As already discussed, Defendants may present an entrapment defense based on the conduct of the government's informants. To properly prepare that defense, Defendants need to know the full extent of the informants' involvement in the alleged conspiracies. Certainly, it is helpful that the government has produced tape recordings. However, the recordings are not sufficient if for no other reason than the government has not produced recordings of every meeting. For example, the government has not produced recordings of the February 6-7, 2007 meetings which are vitally important because those were the first meetings between Defendants and the informants identified as CS-1 and CS-2[5] in the Indictment. *See infra* Point VI.

But even had the government produced recordings of every relevant meeting, Defendants should still be entitled to interview the informants to confront them and test their knowledge

---

[5] There are inconsistencies in how the government refers to its informants. It appears that the informants identified in the Indictment as CS-1 and CS-2 are referred to as CS-2 and CS-3 in the Government's Opposition. *Compare* Ind. ¶11b ("the CSs [CS-1 and CS-2] told . . . the defendants . . . that they represented the FARC . . .") *with* Government's Opposition at 4 (". . . CS-2 and CS-3 identified themselves as representatives of the FARC . . ."). In addition, it appears that the informant referred to as CS-1 in the Government's Opposition is the same person referred to as W-5 in the Leslie Brown Affidavit. *Compare* Government's Opposition at 4 ("There is no dispute that Al Ghazi later introduced CS-1 to Al Kassar in connection with the weapons deal") *with* Leslie Brown Affidavit at ¶27 (Ex. A) ("Al Ghazi then agreed to set up a meeting for W-5 with Al Kassar").

about non-recorded events. The government's informants were present at every stage of the alleged conspiracy. *See United States v. Barnes*, 486 F.2d 776 (8th Cir. 1973) (". . . where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense") (citation omitted). Indeed, it is no stretch to say that CS-1 and CS-2 appear in the majority of the Indictment's paragraphs describing overt acts. In fact, some of those overt acts allege no conduct by the Defendants, but rather only conduct by the informants. *See, e.g.*, ¶¶ 11b, 11d, 11l. It is imperative that defense counsel be able to inquire of the informants about all those acts to test the informants' actual knowledge and interpretation of those events. Such interpretation is crucial to determining whether the Defendants had the intent required to commit the alleged crimes. Mr. Al Kassar respectfully requests that the Court order the government to disclose the identities of: (a) the informants identified in the Indictment as CS-1 and CS-2; (b) the informants identified in the Leslie Brown Affidavit as W-1, W-2, W-3, W-4, W-5, CS-1, and CS-2; (c) the informants identified in the William Brown Affidavits as W-1, W-2, W-3, W-4, W-5, CS-1, and CS-2; and (d) the informants identified in the Government's Opposition as CS-1, CS-2, and CS-3.

Further, if informants are under the control of the government, the government should produce the informants for interviews. *See Saa*, 859 F.2d at 1074. Here, it is clear that the informants are under the control of the government because the CSs are "cooperating with the DEA in exchange for financial compensation." *See* William Brown Affidavits (Ex. B at ¶15, Ex. C at ¶25).

## VI.    AL KASSAR'S MOTION FOR DISCOVERY PURSUANT TO RULE 16 SHOULD BE GRANTED.

The government has produced audio and visual recordings, and transcripts thereof, of all but one set of the meetings cited in the Indictment. It was at that set of meetings, which took

14

place from February 6-7, 2007, that, according to the government, the government's informants

first said things to the Defendants that made the purported arms transaction illegal. *See, e.g.*, ¶

11b. The importance of these meetings is obvious, yet the government has declined to produce

recordings of these meetings because such recordings, according to the government, are

inaudible. Defendants respectfully request this Court to order the government to produce the

recordings of the February 6-7, 2007 meetings so that Defendants have the opportunity to

determine audibility for themselves.

Under Fed. R. Crim. P. Rule 16(a)(1)(E), "the government must permit the defendant to

inspect and to copy [*inter alia*] . . . papers, documents, data, photographs, [and] tangible objects

. . . if the item is within the government's possession, custody, or control and . . . the item is

material to preparing the defense." Showing materiality for purposes of Rule 16 normally is not

a heavy burden; "rather, evidence is material as long as there is a strong indication that it will

'play an important role in uncovering admissible evidence, aiding witness preparation,

corroborating testimony, or assisting impeachment or rebuttal.'" *See United States v. Lloyd,* 992

F.2d 348, 351 (D.C. Cir. 1993) (citation omitted); *United States v. Stevens*, 985 F.2d 1175, 1180

(2d Cir. 1993) ("[e]vidence that the government does not intend to use in its case in chief is

material if it could be used to counter the government's case or to bolster a defense").

In addition, the materiality of evidence does not turn on whether the evidence is

exculpatory or inculpatory. Rather, Rule 16 "authorizes defendants to examine Government

[evidence] material to the preparation of their defense against the Government's case-in-chief[.]"

*United States v. Armstrong*, 517 U.S. 456, 463 (1996). Thus, even inculpatory evidence satisfies

this standard by assisting defendants in "preparing a strategy to confront the damaging evidence

at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting

a defense which is undercut by such evidence." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998).

Here, the recordings of the February 6-7, 2007 meetings are clearly material because those meetings are the subject of the very first paragraphs of the overt acts listed in Count One. *See* ¶¶11a – 11k. The recordings purportedly cover two days of conversations between the Defendants and government informants. Much of the government's case is founded on these conversations. For example, it is through these meetings that the government alleges that Mr. Al Kassar openly exhibited violent intentions towards the United States. Ind. ¶11c ("On or about February 6, 2007, [Al Kassar] told the [government informants] that his fight was also with the United States and agreed to sell weapons to FARC."). Such evidence is clearly material to the Defendants' preparation against the government's case-in-chief. Furthermore, because the government concedes that it is in possession of the recordings, the burden to disclose the recordings is low. Defendants should have the opportunity to inspect the recordings themselves rather than rely on the government's assertions that such recordings are inaudible. Defendants further request the opportunity to inspect the recording devices used by the government informants.

In addition, we have reason to believe that the government recorded telephone conversations between Mr. Al Kassar and third-parties. To the extent the government is in possession of any recordings, or transcripts thereof, between Defendants and third-parties, we respectfully request that the Court order the government to produce such recordings and transcripts. Such evidence is material to the Defendants' preparation against the government's case-in-chief.

Finally, the government should produce any notes of post-arrest conversations between

any Defendant and United States government agents so that Defendants can properly confront any alleged statements.

**VII.    SURPLUSAGE**

On July 11, 2008 the Court stated that it does not read the Indictment to the jury or provide a copy to the jurors.  In the event that the Court later believes it appropriate to change its mind, we respectfully request the opportunity to address the issue of surplusage.

<u>**CONCLUSION**</u>

For the foregoing reasons, we respectfully request that Mr. Al Kassar's motions be granted in all requests, and for such other relief that the Court deems appropriate and equitable.

Respectfully submitted,

DICKSTEIN SHAPIRO, LLP

By: _____

Ira Lee Sorkin
Nicole DeBello
Elliott Z. Stein
*Attorneys for Monzer Al Kassar*
1177 Avenue of the Americas
New York, New York 10036
Tel. (212) 277-6500
Fax  (212) 277-6501

17