UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

**UNITED STATES OF AMERICA**

   **v.**

                                              **No. 07-CR-0354 (JSR)**
**MONZER AL-KASSAR,**

                                              **MEMORANDUM OF LAW**

            Defendant.
_____

### DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE BASED ON EXTRAORDINARY AND COMPELLING REASONS

Monzer Al-Kassar, by undersigned counsel, moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, for a modification of his sentence based on extraordinary and compelling reasons, that is, advanced age and debilitating illness, which puts him at very high risk from COVID19.

The current Covid19 epidemic poses an extraordinary and compelling reason to release Mr. Al-Kassar, in addition to the already-existing reasons under USSG 1B1.13. As noted below, as stated in *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020), on March 19, 2020, the House Judiciary Committee urged that all existing authority be utilized to reduce the number of people in federal prisons, especially those over 50 who have conditions such as diabetes.

The virus is already spreading in many federal prisons - soon it may be too late for Mr. Al-Kassar. See https://www.bop.gov/coronavirus/, and

1

https://www.cbsnews.com/news/coronavirus-prison-federal-employees-say-conflicting-orders-putting-lives-at-risk-2020-03-18/. Mr. Al-Kassar is 74 years old, and has several serious, chronic health conditions, including diabetes and hypertension, which put him at particular risk from the virus. He has already served well more than 10 years of his sentence.

**Introduction**

Mr. Al-Kassar has been incarcerated in connection with this case for nearly thirteen years, since his arrest in Spain in June 2007. Mr. Al-Kassar was extradited to the United States in June, 2008, convicted after trial in November, 2008, and sentenced to 360 months in February, 2009. He is not due to be released until July 25, 2033, at which point he, if still alive, will be 88 years old.

Mr. Al-Kassar is currently 74 years old, and suffers from several serious and chronic medical conditions, as described below – they include spinal stenosis which has significantly compromised his ability to function in prison, as well as diabetes with polyneuropathy, hypertension and hyperlipidemia. These conditions, especially coupled with his age, put him at a very high risk for dying of COVID19. See Affidavit of Dr. Brie Williams, attached as Exhibit "A," at 4.

Moreover, according to Dr. Williams, the risk of exposure to COVID19 is extremely high in the prison environment, where it is impossible to practice social distancing. Exhibit "A" at 2-3.

In *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020), the court very recently granted a compassionate release motion for a 73 year-old with diabetes, stating:

> "Congress has expressed its desire for courts to 'use all available powers and authorities…to reduce the number of federal prisoners…' especially to individuals like defendant. …Letter of House Judiciary Committee, March 19, 2020 ('We urge you to use…existing authority…to release federal inmates who are vulnerable to COVID-19 (for instance, persons…who are 50 years old and older, and who suffer from chronic illnesses like…diabetes…')…" *Copeland*, supra, at 7, emphasis supplied.

In addition, it is submitted that Mr. Al-Kassar meets the United States Sentencing Commission criteria for "extraordinary and compelling circumstances" set for in USSG 1B1.13 comment n 1 (B) based on "Age of the Defendant." He also meets the USSG 1B1.13 comment n 1 (A) criteria based on "Medical Condition of the Defendant."

Moreover, Mr. Al-Kassar does not pose a danger to anyone's safety, and the 18 USC 3553(a) factors also support a reduction in sentence. Even prior to the extreme risk from COVID19, several people wrote compelling letters requesting that the Court grant this motion because continued incarceration would be unduly harsh.

**Jurisdiction and Authority to Act**

Mr. Al-Kassar is presently incarcerated, under BOP Register Number 61111-054, at the Communications Management Unit at USP Marion. On July 1,

2019, he requested of the Warden that the Bureau seek his release under §
3582(c)(1)(A)(i). The Warden denied this request on August 8, 2019. (Mr. Al-
Kassar's Application and the Warden's Denial are attached at Exhibit "B") Well
more than 30 days have elapsed since the Warden received Mr. Al-Kassar's
request. Accordingly, this Court is empowered under § 3582(c)(1)(A) to act on the
defendant's own motion.

**Mr. Al-Kassar is Eligible for Release Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, and the Criteria Set Forth in USSG 1B1.13**

The governing statute directs the Court to first determine if there are
"extraordinary and compelling reasons" consistent with policy Statements by the
Sentencing Commission; to determine whether the defendant poses a "danger to
the safety of any other person or the community" as set forth in 18 USC 3142(g);
and finally to grant the motion if the factors set forth in section 3553(a) do not
require its denial. 18 USC 3582(c); 18 USCS Appx 1B1.13; *United States v.
Ebbers*, 2020 US Dist. LEXIS 3746 (SDNY 2020.)

The Commission's policy statement, USSG § 1B1.13, contains three
different provisions under which Mr. Al-Kassar is eligible for sentence
modification: Medical Condition of the Defendant (1B1.13, Application Note
1[A]; Age of the Defendant (1B1.13, Application Note 1[B]; and Other
Extraordinary and Compelling Reasons [here, COVID19]). Application Note 1(A)
provides:

"(A) Medical Condition of the Defendant.
***
   (ii) The defendant is –
***
    (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) – Age of the Defendant – provides:

        (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

As already noted, Mr. Al-Kassar is presently 74 years of age and has served nearly 13 years of his 30 year term, and thus certainly meets two of the three criteria set forth in the Age of the Defendant section.

**Medical Records and Report of Bryan Kurtz. M.D.**

In addition, Monzer Al-Kassar has been experiencing a serious deterioration of his physical health as a result of aging in several different ways. His medical records show several chronic conditions. (Medical Records[1] attached as Exhibit "C") The Clinical Encounter from 2/7/19 documented the following conditions. (Exhibit "B: at 1)

    1.        DIABETES, for which he takes Metformin and Glipizide;

---

[1] Counsel ordered medical records via FOIA but has yet to obtain them. The records attached here are those which Mr. Al-Kassar was able to obtain, and are not comprehensive. If more records are needed, it is likely that the United States Attorney will be able to obtain them from BOP more expeditiously, and then they could be reviewed by Dr. Bryan Kurtz, the expert retained by the defense.

2.      HYPERLIPIDEMIA, for which he takes aspirin and Atorvastin;

3.      DIABETIC NEUROPATHY, for which he takes Amitriptyline;

4.      HYPERTENSION, for which he takes Amlodipine, Lisinopril
        [also used for back pain], Propanolol and HCTZ
        (Hydrochlorothiazide);

5.      ORTHO/ Low back pain. An MRI showed DJD (degenerative
        Joint disease), facet disease, disc protrusion, and stenosis. This
        condition has been worsening and the pain has been bad in the
        back and also spreading down the right leg. He has also been
        having significant pain in his right palm with difficulty making
        a fist.

According to the Center for Disease Control, diabetes and hypertension are
among the conditions which pose a heightened risk of complications and fatality
from COVID19. (Exhibit "A" at 4) It is also very clear that people in their 70's or
older, such as Mr. Al-Kassar, face a heightened risk from the virus due to their age
alone. (Exhibit "A" at 4) Finally, all those in a prison environment face a higher
risk of complications and death from the virus due to the limited and problematic
medical care available in prison. (Exhibit "A" at 4, 6-7)

Prior to the outbreak of the virus, Monzer Al-Kassar had been suffering the
most from the back and leg pain caused by his degenerative joint disease, disc
protrusion and related stenosis. The defense consulted with Dr. Bryan Kurtz, who
wrote a Report which mainly focused on these conditions, as they are what is
making life in prison the most difficult for Mr. Al-Kassar. (Report attached as
Exhibit "D") Dr. Kurtz' CV is attached at Exhibit "D" at 8-10) (However, as

discussed above, the risk he faces from COVID 19 now makes the situation much more urgent.)

Dr. Kurtz is experienced in internal medicine and emergency medicine, and previously served as the director of a small nursing home, so he is accustomed to evaluating functional disability with regard to the environment. (Exhibit "D" at 1)

Dr. Kurtz reviewed the records the defense was able to obtain, and found that Mr. Al-Kassar's conditions were chronic, related to the aging process, and that they diminished his ability to function in a prison environment. (Exhibit "D" at 5) Dr. Kurtz also found that the conditions were unlikely to improve with conventional therapy. (Exhibit "D" at 5)

Dr. Kurtz' findings show that Monzer Al-Kassar is eligible for compassionate release under the "Medical Condition of the Defendant" criteria in 1B1.13, Application Note 1(A.) His findings also would clearly apply to the lesser medical requirements contained in 1B1.13, Application Note 1(B) ("Age of the Defendant"), which simply require a serious deterioration in physical health due to the aging process. It is submitted that the five different chronic conditions listed above meet that criterion, without even considering the extent to which the back problems are making life very painful and difficult for Mr. A-Kassar.

Again, prior to the COVID19 outbreak, Dr. Kurtz stated:

"…I can state with a reasonable degree of medical certainty that the criteria put forth for reduction in sentence based on medical review are met.

These criteria include the presence of a serious or chronic medical condition related to the aging process that diminishes the ability to function in a correctional facility. It follows that as a result of his condition, Mr. Al-Kassar's ability to perform the instrumental activities of daily living – particularly those activities which require significant mobility and flexibility such as cleaning his cell and ambulating to the mess hall – would be compromised.

This is corroborated by Mr. Al-Kassar's self-reported situation as well as by the history documented in his surgical evaluation. He is reported in this evaluation as being unable to stand for more than ten minutes, sit for more than ½ hour, and only being able to walk with crutches or a cane….

\*\*\*

I can conclude based on my review of the records, the relevant medical literature, and my years of experience, that there is a low probability that he would receive substantial long-term benefits from conventional medical treatments." Exhibit "D" at 5-6)

Based on Dr. Kurtz's findings, it is submitted that Monzer Al-Kassar meets the USSC 1B1.13 criteria stated above for "Medical Condition of the Defendant." As stated above, if he meets those criteria, Mr. Al-Kassar certainly meets the less stringent criteria set forth under "Age of the Defendant." As discussed further below, the extreme risk posed to him by COVID19 constitutes an "extraordinary and compelling reason" under Application Note 1(D) of USSG 1B1.13.

Therefore, Monzer Al-Kassar requests that this Court find that he meets any or all of the above criteria and is eligible for compassionate release. As noted above in Footnote 1, further medical documentation could be obtained if necessary, and the most efficient way to do that is if the government makes the request. In addition, if the Court wishes to have a hearing, Dr. Kurtz is willing to testify.

**The Denial by the Bureau of Prisons was not Based on the Same Criteria Utilized by the Court and was Erroneous in Any Event**

The governing statute does not call upon the Court to give any weight or consideration to the Bureau of Prisons' denial of the inmate's request. And the criteria used by BOP is not the same as that set forth in USSG 1B1.13, though it is similar to the criteria under "Medical Condition of the Defendant." But even with regard to the BOP criteria, the reasons for rejecting Mr. Al-Kassar's application are not supported by the medical records.

The BOP criteria for Elderly Inmates with Medical Conditions state that the elderly inmate must be "experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional setting." (Warden's Denial, attached as Exhibit "B" at 2) The Warden stated that Mr. Al-Kassar's conditions did not "substantially diminish [his] ability to function in a correctional setting." (Exhibit "B" at 2)

The Warden also provided Mr. Al-Kassar with a Reduction in Sentence Medical Review document which did concede that he suffers from a chronic progressive illness (diabetes) but that his prognosis was good, and his life expectancy was not said to be less than 18 months. (Exhibit "B" at 4) Despite the fact that he believed he had prostate cancer[2], Mr. Al-Kassar made no claim that he had less than 18 months to live, and the determination was not based on a terminal diagnosis, so that statement was not relevant.

The document also claimed that conventional treatment could provide substantial improvement – it did not mention which condition(s) this was referring

---

[2] Back in 2008, it was suspected Mr. Al-Kassar may have prostate cancer, but he declined an exam to find out more. Thus it is not clear whether he has this cancer or not. (Exhibit "C" at 30)

to, or what treatment. (Exhibit "B" at 4) As to the severe back problems, this contradicts Dr. Kutz' findings – he determined that conventional treatment was *not* likely to provide substantial improvement. (Exhibit "D" at 6) As to his other conditions, while the diabetes, diabetic neuropathy, hypertension and hyperlipidemia are kept under control for now through medication, there is no indication that conventional treatment will provide any substantial improvements. And they put him at high risk for COVID19.

Moreover, Dr. Kurtz also found that Mr. Al-Kassar's ability to function in the prison environment – particularly his ability to walk where needed, to clean his cell, and other daily living activities, *was* compromised by his condition. (Exhibit "D" at 5) Dr. Kurtz noted that the "Instrumental Activities of Daily Living" referred to on the BOP document were more relevant to "the more debilitated elderly population in a nursing facility" rather than the general correctional population. (Exhibit "D" at 5)

Therefore, it is submitted that Mr. Al-Kassar does meet the BOP criteria for Elderly Inmates with Medical Conditions, but regardless, those are not the criteria utilized by the Court. As set forth above, Mr. Al-Kassar meets the criteria set forth in 1B1.13 and is eligible for compassionate release.

In *United States v. Modica*, 2020 US Dist. LEXIS 37483 (SDCA 2020) the court very recently granted released to a 77 year-old man serving a life sentence whose medical condition was similar to Monzer Al-Kassar's, and who was also mistreated in prison. The *Modica* court stated:

> "Before passage of the FSA, the Sentencing Commission limited 'extraordinary and compelling reasons' to four scenarios…One of those

scenarios applies here. Specifically, 1B1.13 cmt n. 1(B) provides that 'extraordinary and compelling reasons' exist where a defendant '(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less….

      \*\*\*

      Defendant meets these criteria. He is 77 years old and he has served at least 10 years of his term of imprisonment. He also has a well-documented history of serious deterioration in physical and mental health which is age-related. He is enrolled in a general chronic care clinic, and presents several age-related conditions, including 'benign prostatic hypertrophy,' 'mild-to-moderate degenerative disc disease,' and 'some decrease in memory.' He was placed on suicide watch in December, 2018, after being assaulted. … These facts are not disputed, and are sufficient to show Defendant is experiencing serious deterioration in physical and mental health because f the aging process. Defendant has therefore presented extraordinary and compelling reasons in support of his motion." *Modica*, supra, at 6-9.

Similarly, in *United States v. Cantu-Rivera*, 2019 US Dist. LEXIS 105271 (SDTX 2019), the court also found that the defendant was eligible under the "Age of Defendant" criteria (and granted the motion), stating, at 3:

      "Mr. Cantu-Rivera meets the age-related definition of extraordinary and compelling circumstances in USSG 1B1.13, comment (n.1(B)). He is 69 years old, he is experiencing serious deterioration in physical health because of the aging process (arthritic conditions in multiple joints, cataracts, diabetes, prostate conditions), and he has served 30 years in prison."

In *United States v. Davis*, 2020 US Dist. LEXIS 40652 (DMD 2020), the court likewise granted the application, stating:

      "The Court finds that Davis meets the definition of 'extraordinary and compelling reasons' as defined by USSG 1B1.13 Application Note 1. …[H]e is 79 years old and reports serious deterioration of his physical health. He has undergone three prostrate surgeries and has been diagnosed with benign  localized hyperplasia of the prostate, among numerous other ailments. … The Bureau of Prisons classifies him as medical level II, which

requires chronic care. … Davis has served more than 10 years of his sentence…" *Davis*, supra, at 5-6

Monzer Al-Kassar appears to have even more serious chronic health conditions than the defendants in *Modica, Cantu-Rivera* and *Davis*– he has diabetes (putting him at greater risk for Covid19), diabetic neuropathy, hypertension, hyperlipidemia, and his *severe* degenerative disc disease, which has made things very difficult for him. Mr. Al-Kassar was also assaulted in prison twice, albeit years ago. More recently, as discussed below, in 2016, he was placed in a "hot box" in FCI Terre Haute, which subjected him to extreme heat causing him to pass out, and also subjected him to extreme noise, which has caused hearing problems.

Like the *Modica, Cantu-Rivera* and *Davis* defendants, based on his age, time served and his several chronic health conditions, Monzer Al-Kassar meets the criteria for "extraordinary and compelling reasons" set forth in 1B1.13.

**Motions Granted Based on COVID19 Risk**

Very recently, federal courts, including this one, have been granting compassionate release motions (or otherwise acting to release people or keep them released) based on the risk posed to particular defendants by the COVID19 virus. *United States v. Campagna*, 2020 US Dist. LEXIS 54401 (SDNY March 27, 2020) (55 year old man with compromised immune system granted compassionate release); *United States v. Edwards,* 6-17-cr-00003 (WDVA April 2, 2020); (compassionate release granted due to COVID19 risk and serious illness); *United States v. Rodriguez*, 2:03-cr-271 (EDPA April 1, 2020); *United States v. Huneeus,* 1:19-cr-10117, (D MA March 17, 2020 (Granting motion for reduction

12

of sentence, finding that extraordinary and compelling reasons exists "in light of
the national state of emergency due to the global COVID-19 pandemic and
Hunneus' unique health circumstances"); *United States v. Copeland,* No. 2:05-cr-
135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in
part due to "Congress's desire for courts to release individuals the age defendant is,
with the ailments that defendant has during this current pandemic"); *United States
v. Perez*, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant
on bail due to the "heightened risk of dangerous complications should he contract
COVID-19"); U*nited States v. Stephens*, 2020 WL 1295155, (S.D.N.Y. Mar. 19,
2020) (releasing defendant on bail in light of "the unprecedented and
extraordinarily dangerous nature of the COVID-19 pandemic"); *United States v.
Roman*, 2020 U.S. Dist. LEXIS 53956, at *5 (S.D.N.Y. Mar. 27, 2020) ("COVID-
19 presents and unprecedented public health crisis"); *United States v. Witter*, No.
19-Cr-568 (SHS), 2020 U.S. Dist. LEXIS 53189, at *4 (S.D.N.Y. Mar. 26, 2020)
("Accordingly, defendant's risk of serious infection while in custody as a result of
his medical condition 'present[s] a unique combination of circumstances giving rise
to [a] situation[] that [is] out of the ordinary'"); *United States v. Grobman*, 18-cr-
20989 (SDFL Mar. 29, 2020) (releasing defendant convicted after trial of fraud
scheme in light of "extraordinary situation of a medically-compromised detainee
being housed at a detention center where it is difficult, if not impossible, for [the
defendant] and others to practice the social distancing measures which
government, public health and medical officials all advocate"); *United States v.
Powell*, 1:94-cr-316-ESH (Mar. 28, 2020) (granting unopposed motion for
compassionate release in light of COVID-19 and finding it "would be futile" to

13

require defendant to first exhaust in light of open misdemeanor case); *United States v. Mclean,* 19-cr-380 (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. § 3142(e), but tilts the balance in favor of release."); *United States v. Michaels*, 8:16-cr-76-JVS, (C.D. Cal. Mar. 26, 2020) ("Extraordinary circumstances may require relief not otherwise available. Such is the case here… the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i).); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement.); *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Avenatti*, No. 8:19-cr-61 (C.D. Cal. Mar. 25,

2020) (sua sponte inviting defendant to move for reconsideration of a just-denied motion for release "[i]n light of the evolving nature of the Covid-19 pandemic"); *United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"); ; *United States v. Kennedy*, No. 5:18-cr-20315, Dkt. No. 77 (Mar. 27, 2020) (post-plea presentence release of defendant whose pretrial release was revoked because "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is *necessary* for Defendant to prepare his pre-sentence defense".)

In *Copeland*, supra, at 7, 9, the court granted the motion, stating, with regard to the 73 year-old defendant with diabetes:

> "…Given defendant's tenuous health condition and age, remaining incarcerated during the current global pandemic puts him at even greater risk for severe illness and possible death, and Congress has expressed its desire for courts to 'use all available powers and authorities…to reduce the number of federal prisoners…' especially to individuals like defendant. …
> …Therefore, the court grants defendant's motion and modifies his total sentence to time served…"

On April 1, 2020, in *United States v. Rodriguez*, supra, the court also granted the motion, for a much younger (44 year-old) man with diabetes and hypertension, largely due to the risk presented by COVID19, stating:

"We are in the midst of an unprecedented pandemic. …People with pre-existing medical conditions – like petitioner… - face a particularly high risk of dying or suffering severe health effects should they contract the disease.

Mr. Rodriguez is … in year seventeen of a twenty-year mandatory-minimum sentence for drug distribution and unlawful firearm possession… Mr. Rodriguez has diabetes, high blood pressure, and liver abnormalities. …He moves for a reduction of his prison sentence and immediate release under the 'compassionate release' statute…

*For Mr. Rodriguez, nothing could be more extraordinary and compelling that this pandemic. Early research shows that diabetes patients, like Mr. Rodriguez, have mortality rates that are more than twice the overall mortality rates [from COVID 19]…*

These statistics – which focus on the non-prison population – become even more concerning when considered in the prison context. *Prisons are tinderboxes for infectious disease. The question whether the government can protect inmates from COVID-19 is being answered every day, as outbreaks appear in new facilities. …*I reach the inescapable conclusion that Mr. Rodriguez must be granted compassionate release.

\*\*\*

I conclude that (1) the Court may independently assess whether 'extraordinary and compelling reasons' exist; (2) the COVID-19 pandemic – in combination with Mr. Rodriguez's underlying health conditions… - constitute 'extraordinary and compelling reasons' that warrant a reduction; (3) Mr. Rodriguez is not a danger to his community; and (4) the factors under 3553(a) favor reducing Mr. Rodriguez's sentence…

\*\*\*

Given Mr. Rodriguez's vulnerability to COVID-19, prison is a particularly dangerous place for him. … Indeed, Congress and the Department of Justice are increasingly recognizing the danger of COVID-19 outbreaks in prison and encouraging steps to release some inmates. …

\*\*\*

…FCI Oakdale, a BOP facility in Louisiana, recently 'exploded with coronavirus' cases, leading to the death of an inmates and positive test results for thirty other inmates and staff. See www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c)-71d5-11ea-85cb-8670579b863d_story.html …

\*\*\*

16

Mr. Rodriguez has now served the lion's share of his sentence. *But his sentence did not include incurring a great and unforeseen risk of severe illness or death.* For this reason I will grant Mr. Rodriguez's motion for a sentence reduction, I will sentence him to time served…" *Rodriguez*, at 1-3, 13, 15-17, 23-24, emphasis supplied.

As with the defendants in *Rodriguez* and *Copeland*, Mr. Al-Kassar is at extreme risk from the virus, based on his age and medical conditions, and the Court should grant this motion for that reason.

**Letters of Support**

Several people have written letters in support of release for Monzer Al-Kassar. Roger Stavis, Mr. Al-Kassar's appeal attorney, wrote a letter about how much he has suffered not being able to see his family for so long, stating:

"…I represented co-defendant, Felipe Moreno-Goday, at his joint trial with Monzer Al Kassar… and represented both men on their joint appeal… I have read the report prepared by Bryan Kurtz, N.D., addressing the myriad of health problems plaguing Al Kassar.

While I cannot speak to those health problems, I can perhaps enlighten the Court with regard to the emotional toll that imprisonment has taken on both Al Kassar and his family. …I have visited with the family in Spain on several occasions. For the first few years of Al Kassar's incarceration, his brother, Ghassan Al Kassar, assumed the role of the family leader. Unfortunately, he passed away around 2010. Leaving the family adrift. While all families suffer from the incarceration of loved ones, the suffering of the Al Kassar family is particularly acute … because they have never and can never visit him in prison. …

…[This] has also had an extreme impact on Al Kassar. Cut off from his family in a maximum security prison, he is doing the 'hardest time' imaginable. When I last saw Al Kassar at FCI Estill… toward the end of 2010, he appeared to have aged tremendously. While at that point he had been incarcerated for just 3 years…he has now suffered through 13 years of

17

incarceration. *Without the succor of family visits, suffering from various ailments, and with the specter of Coronavuris hanging over him… the prognosis for this 74 year-old inmate is bleak indeed.*

…While Al Kassar had lived in various other countries in his life, one country in which he had never set foot was the United States. And it is here where he remains incarcerated without being able to see his loved ones. It is a harsh penalty indeed… I would respectfully request that Your Honor look favorably upon his application." (Exhibit "E" at 1-2, emphasis supplied)

Spanish Attorney Sara Martinez Lumbreras wrote about Mr. Al-Kassar's condition seven years ago when she visited him, and how much worse it must be now, stating:

"…I met Mr. Al-Kassar 30 years ago, and I have dealt with him both professionally and also as a friend. …

***

…[T]he most important thing now is to get a reduction of Monzer's sentence because he is suffering in a terrible way. I went to visit him 7 years ago in South Carolina (FCI Estill) and even then I could see with my eyes how he has changed. He lost a lot of weight and he looked much older. I can only imagine how he looks now.

For more than 10 years he wasn't able to have any visits from his family. Monzer lost two brothers and a sister during this time. His son and three daughters have never been able to visit him. I think this has been even more difficult for him than his long sentence.

Monzer has had excellent behavior in prison. …He is very old now and has problems with his back, which are very painful, and this makes it so he can't exercise. He also has problems with his blood sugar, and has high blood pressure as well.

Please try to have some charity for someone who will be 80 years [old] soon. … He doesn't have connections with any terrorist groups. He only wants to go home to be with his family…"  (Exhibit "E" at 3)

Monzer Al-Kassar's wife, Raghdaa Habbal, and four adult children, who currently live in Spain, wrote a group letter about how hard it has been not to even

18

be able to visit him, and how much they want for him to be released to Syria,

stating:

> "…We would like to speak …about … [what] we are facing for the past 12 years without Monzer Alkassar, a husband, a wonderful dad. …My daughter Monawar Alkassar, the eldest daughter, is facing a melancholic depression due to the shock of his arrest and now facing mental illness for not seeing her dad [for] 11 years, her situation is critical. … We haven't seen him for 11 years and we have tried to get American visas… the American Embassy has not given us a real answer… Haiffa and myself Raghdaa tried to go … in 2009 to go to his trial … we got detained in Newark airport for three days, we weren't treated well… We… are now speaking out because we know he is sick and [we] would like to see him in his last days… We know he has a cane, has eyesight problems and has trouble walking… …[H]e is 75 years old and still has another 15 years to go which we doubt he will live for that long… We as a family are asking you to have mercy on us and try to help us bring him home to his beloved country Syria… …[W]e are suffering without him, we believe a person should always get a second chance in life… He has lost a lot of family members during the 12 years… …[S]peaking to him for 15 mins twice a week is very stressful and when he does not call we all panic… this is not the way to live life…" (Exhibit "E" at 4)

Mr. Al-Kassar's former employee, Assuman Munyantore Nyampeta, wrote

about how well he treated him, and how much he and his family are suffering,

stating:

> "I was [the] chief employee for Alkassar's family for 17 years till the day of his arrest. I became like a family member.
>
> Mr. Monzer Alkassar treated me and his [other] employees with dignity, love and pride. … His hands [were] always being extended to the poor, and, the ones who needed help. He was a real man for his family and others!
>
> His wife and his great children … [have] suffered and [are] still suffering a lot of mental and physical problems, from prohibiting them to enter the U.S.A. to visit him. …[H]is health [has been] deteriorating … in the last few years. Now, he is walking with a cane and has so many serious illness[es] for an old man of 75.

I ask you from the heart of my heart to consider giving him a second change… for him to be able to see his loved ones and to live with his family [for] whatever time [he has] left…" (Exhibit "E" at 5)

The Smolders family of the Netherlands, who became close to Mr. Al-Kassar when they lived in Spain, wrote that they had been able to visit him recently, and were upset to see his condition, stating:

"…We have … known Alkassar and his great family for many years. Alkassar is a real Gentleman, … respected by the Spanish people for his kindness, help to poor people, and for many other human aspects. …
Last month (July 2019) we came … for one week to visit him after we heard of his serious health issue, when his direct family was not allowed to visit him for the last 12 years… …We were choked and sad to see him with very bad health issue, and not being able to walk and supported by cane.
…He remained steadfast, morally, with all the suffering and hard conditions… adding the loss of two brothers and two sisters during his incarceration [and] his great children, who are suffering and worried for not seeing him again. We trust in God and your compassion for Alkassar [so he] could spend whatever days he has left with his family." (Exhibit "E" at 6)

Reginald Falice also wrote in support of his friend, Monzer Al-Kassar, stating:

"…I've known Al Kassar for more than several years now.
…RECIDIVISM will not be an issue, with him.
…Al Kassar has earned a rightful access to whatever benefit(s) offered by … Congress [the First Step Act.]
Al Kassar is over 74 … with medical conditions which prove debilitating… Kassar relies on support of a cane. Complicating his wellness are disorders with high blood pressure, diabetes…
***
May the reader(s) of these words move .. to provide a redemption to one deserving of relief…" (Exhibit "E" at 7)

Dr. Kees Jan Kuilwijk, an attorney who took an interest in Mr. Al-Kassar's case, wrote a lengthy letter in support of release, which gave his opinion on the underlying case, as well as discussing Mr. Al-Kassar's family. He stated:

"I am writing as a friend of Mr. Assuman Munyantore… Through him, I became aware of Mr. Al-Kassar's legal troubles. As an attorney, I took a professional interest in the case.

By way of introduction, I was a partner at a US law firm, Steptoe & Johnson for well over a decade. During those years… I was involved in a number of cases in which you have been asked to render judgment, for example Motorola Credit Corp. v. Uzan. It is a small world indeed. In that particular case, I was asked… to chase Uzan assets in Europe that were bought with Motorola money.

I guess Mr. Al-Kassar's case has worked its way through the cogs and gears of the legal system, and that he has no appeals left. At this time, it is essentially a case about human rights, in the broad sense of the term.

…I understand Mr. Al-Kassar's request is mainly based on medical … changes in his situation.
      ***
Arms brokers merely organize and facilitate transfers in military equipment. They do not manufacture arms and they do not use them…
      ***
In February of this year, CNN reported that Saudi Arabia and its coalition partners have transferred American-made weapons to Al Qaeda-linked fighters, Salafi militias, and other factions…Some of America's 'beautiful military equipment,' as President Donald Trump once called it, has been, 'passed on, sold, stolen or abandoned in Yemen's state of chaos…'

In his first year in office, President Trump has earnestly played the role of salesman-in-chief for United States arms manufacturers….
      ***
Mr. Al-Kassar … has been attacked and tortured several times; while awaiting his extradition to the U.S. in Spain and also in a U.S. prison. His own family is not allowed to visit him.
      ***
…The visitation restriction imposed upon Mr. Al-Kassar's family is a cruel and unusual confinement condition…
      ***

21

…When a judge and jury send a man to prison, they punish more people than just one; people who are clearly innocent of any crime.
***
*Mr. Al-Kassar's incarceration has affected his family in an enormous way. It has basically destroyed their lives. One of his daughters is suffering from serious mental issues because of it. …*
***
*At this point in time, Mr. Al-Kassar's case is about whether the sentence which was handed down is (still) just in light of his deteriorating health and whether there might be compelling reasons to release him.*
***
The media often portrays Mr. Al-Kassar in a negative light… However the stories I know.. paint a different picture. For instance, I am deeply involved in the Rwandan community, my wife is Rwandan Tutsi and a genocide survivor. *I have encountered so many people in this community who have benefitted from Mr. Al-Kassar's efforts to obtain a visa for them to be able to stay and work in Spain.* …
***
I respectfully ask you to grant Mr. Al-Kassar's request for compassionate release. …" (Exhibit "E" at 8-15, emphasis supplied; see also Exhibit "C" at 32-33, medical records where Mr. Al-Kassar discusses being attacked in Spain and in the US prison.)

Gail Gray, one of Mr. Al-Kassar's attorneys, wrote a letter in 2016 about his having been held in a "hot box" at FCI Terre Haute, where he suffered from extreme heat, causing him to faint, and causing his mental state to deteriorate greatly. She stated:

"I saw Monzer on Thursday, 27 October 2016. I was shocked.
I did not recognize him. He was not the same man I had visited… just a few months ago. Now he is gaunt and pale with bags under his eyes and looks to have lost at least 20 pounds….
He reported a tiny, windowless concrete cell, blisteringly hot from deliberate proximity to prison heat pipes and a floor so hot he couldn't stand. …He recalled fainting and, upon waking, praying to stay alive long enough to see his loved ones once more…

22

In addition to box torture, Monzer was subjected to earsplitting sound torture, another practice that causes suicide, severe sleep deprivation, and unrelenting disruption of sensory perception…

When Monzer was finally removed from the isolation chamber at FCI Terre Haute, he was shackled and transported to Marion in a box barely big enough to contain the chair he sat in. …By the time he arrived he couldn't even state his own name or stand without assistance. …

The deliberate and prolonged proximity to the sweltering heat pipes and the deafening noise of the prison generators has compromised Monzer's long-term health. His hearing, his sight, and his balance are all impaired…" (Exhibit "E" at 16; see also Exhibit "C" at 31, where this incident was mentioned.)

Finally, Isabelle Coutant Peyre, another of Mr. Al-Kassar's attorneys, also wrote in support of his release, stating:

"Being one of Mr. Monzer Al-Kassar's attorney[s], registered in Paris bar and specializ[ing] in international law… I write…regarding the extraordinary and compelling reasons for reducing the sentence of my client.
    ***
I knew Mr. Monzer Al Kassar for many years. I was his lawyer [opposing] his extradition to the U.S.A. and for being tortured in Spain before being sent to America. Since then, I had been following his case and …I am aware of the 'New First Act for Reduction of Sentence'.
    ***
He is 75 years old now, spent more than 12 years in prison, and his health is very bad… I am aware he suffers …because of …several discs degenerations… [and] severe diabetes…
    ***
I ask you to consider giving him a second chance to live his [remaining] time with his loved ones who [were] stopped from visiting him for the last 12 years. …" (Exhibit "E" at 17-18)

**Prison Record and Environment**

Monzer Al-Kassar has an excellent record – he has successfully completed a multitude of programs and classes over the years and his disciplinary record, while not completely clean over the years, shows no recent infractions. (2019 Male

23

Custody Classification Form and Individualized Reentry Plan – Program Review, attached as Exhibit "F.")

Mr. Al-Kassar successfully completed at least thirty classes over the years, including human language; European Civilization; Persian; nutrition; infectious diseases; Health and many more. (Exhibit "F" at 2) He also served as a tutor in the English Department at FCI Terre Haute. (Exhibit "F" at 4)

The Reentry Plan noted that Mr. Al Kassar was a chronic care case, with a medical hold and other medical restrictions. (Exhibit "F" at 3)

While undersigned counsel has not been able to obtain all of the relevant records, upon information and belief, he hasn't had any disciplinary violations since 2016, and the 2016 charge only involved him giving another inmate some commissary supplies.

As noted above, Mr. Al-Kassar's time in prison has been very difficult for him. He was assaulted after his arrest in Spain; assaulted again after arriving here in 2008; and then he suffered greatly from being placed in the "hot box" isolation unit at FCI Terre Haute in 2016.

Even worse, unlike most inmates, he has not been able to see any of his immediate family for the past 12 years. Monzer's wife and children have never been able to visit him because they could not obtain US visas to do so. This has been heartbreaking both for him and for them, and has contributed to his eldest daughter's serious mental illness.

Finally, given the current Covid19 outbreak, Mr. Al-Kassar is at great risk. As noted above, given Mr. Al-Kassar's age and serious medical problems, as well

as his imprisonment, his likelihood of surviving the virus, should he contract it, is much lower than for the general population.

### Mr. Al-Kassar Poses no Danger

USSG 1B1.13(2) states that the court must find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 USC 3142(g)." 18 USC 3142(g) contains three factors for the court to consider in this regard: "1) the nature and circumstances of the offense charged; 2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history and drug and alcohol abuse; and 3) the nature and seriousness of the danger to any person or to the community that release would impose."

In *Modica*, supra, the court found that defendant did not present a danger despite some concerns in that regard, stating:

> "1. <u>Nature and Circumstances of the Offense Charged</u>
> …While defendant's statement to the government informant about 'wanting to kill' another informant is of concern… Defendant has no history of committing … acts of violence. …The nature and circumstances of the offense charged do not reveal a propensity for violence or danger to others.
> 2. <u>History and Characteristics of the Person</u>
> …While he is a repeat offender, his time in prison is characterized by many years of counseling and coursework designed for self-improvement, general education and vocational training. …
> ***
> Defendant has numerous family ties, including family members who will provide for him. …
> ***
> 3. <u>Nature and Seriousness of Danger Posed by Release</u>
> …Defendant's health has declined significantly, as discussed. …Defendant will either be removed to Mexico or paroled into the United States – where family awaits in both locations. …

*** 

On balance, the foregoing factors weigh heavily in favor of Defendant. The Court finds Defendant is not a danger to the safety of any person or to the community upon release." *Modica*, supra, at 10-13

In *Spears*, supra, the court likewise found the defendant didn't pose a danger to the community, despite his extensive (and violent) criminal history, and his having possessed guns as part of a large drug conspiracy. The court stated:

> "The government argues that Spears in a danger because the crime of conviction was a large drug conspiracy, he possessed guns during the drug conspiracy, … he was investigated in 1978 for tax evasion and offered a man $500 to burn down an IRS agent's home in the evening… and was then convicted of conspiracy to commit murder, for which he was sentenced to 25 years, he was convicted in 1990 (after being released early from the sentence for the murder conspiracy conviction) of possession of a controlled substance, and after he was released he became part of the instant drug conspiracy. The government argues that Spears' age and medical condition do not render him 'so incapacitated' that he could not resume his former criminal conduct. The government notes that when Spears was in his fifties, he was a leader of a major drug conspiracy.
> The Court recognizes that the underlying offense involved controlled substances of great volume… The Court further considers Spears' past violent conduct… The Court also considers, however, that Spears most recent controlled substance conviction is more than 19 years old… The Court *also acknowledges the significant family and community support awaiting Spears* if he is released.
> In light of the age of Spears' previous convictions, Spears' age [76] and Spears' physical and mental condition, the Court does not find that at this time Spears poses a significant risk to the community." *Spears*, supra, at 12-14, emphasis supplied.

Similarly, in *Fai*, supra, the court stated:

> "The Court is persuaded that Mr. Wong does not present a danger to the community in his current state, and that any conceivable danger would be easily mitigated by supervision conditions. <u>First</u>, Mr. Wong is frail, he requires a walker and can barely eat on his own. … <u>Second</u>, any remote

possibility of dangerousness will be further diminished because Mr. Wong will be released to the custody of his family. …" *Fai*, supra, at 10

In contrast to the defendants in *Modica* and *Spears,* Mr. Al-Kassar has no criminal history (see PSR, Page 24.) Unlike the defendants in all three of those cases (*Mondica*, *Spears* and *Fai*) Mr. Al-Kassar was never involved in violent acts or threats of violence. He was an arms dealer caught in a DEA sting operation and convicted of trying to sell arms to the FARC, which was at that time a designated foreign terrorist organization. As stated by this Court, his goal was to make money, not to support terrorism.

At this point, like the defendants in the above cases, Mr. Al-Kassar is elderly and frail, and simply wants to be with his family for his remaining years. He will be deported to Syria where, upon information and belief, he will be joined by his wife and children, who have been suffering without him, and who are very worried about his health. This Court should find that he does not pose a danger to the safety of any person or to the community.

**The 18 USC 3553(a) Factors Support Release**

Consideration of the applicable factors from 18 U.S.C. § 3553(a), as also required by § 3582(c)(1)(A), leads to the conclusion that reduction at this time of Mr. Al-Kassar's term of imprisonment to the time already served is warranted. In short:

(a) The "characteristics of the defendant," § 3553(a)(1), now include his painful and incurable medical conditions, as well as his very high risk of dying from COVID19 in prison.

(b) Service of nearly 13 years imprisonment fully reflects the seriousness of the offense, and satisfies the need to provide just punishment and to afford adequate deterrence, particularly because service of a sentence while suffering physical pain and other ailments inflicts more punishment in a shorter period of time. In *United States v. McGraw*, 2019 US Dist. LEXIS 78370 (SDIN 2019), the court stated, at 15-16:

> "…Mr. McGraw has served much of his sentence while seriously ill and in physical discomfort. This means that his sentence has been significantly more laborious than that served by most inmates."

In addition, Mr. Al-Kassar's time incarcerated was made even more difficult by the fact that he was assaulted twice, and mistreated by being placed in the torturous "hotbox" in 2016.  He also suffered greatly by not being able to see his wife or children for the past 12 years, and now he risks death from a virus.

(c) Being 74 years old, Mr. Al-Kassar's age places him in the class of prisoners least likely to recidivate. USSC, *The Effects of Aging on Recidivism Among Federal Offenders* (Dec. 2017), available at

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf; *United States v. Modica*, supra, at 15. His physical condition makes any recidivism very unlikely. Moreover, he will be deported to Syria upon release. Based on these circumstances, the need to protect the public from further crimes is fully addressed.

(d) Consideration of providing needed medical care in the most effective manner suggests release rather than continued incarceration. *This is particularly*

*true at this time when prisoners are at great risk from the coronavirus. The virus is already spreading quickly in federal prisons and if Mr. Al-Kassar is exposed to it, his risk of death is very high, given his age and medical conditions. For this reason alone, he should be released.*

(e) Given all the facts and circumstances discussed herein, particularly the fact that he is not likely to survive the full 30-year sentence, a reduction in sentence is not inconsistent with the need to avoid unwarranted sentencing disparities. As stated in *United States v. Bellamy*, 2019 US Dist. LEXIS 124219 (DMN 2019), at 19, "…any disparity resulting from a reduced sentence is not unwarranted given the special circumstances he faces in prison as a result of his health and age."

(f) Finally, upon consideration of the overall statutory command that all sentences, while sufficient to achieve the objectives identified in subsection (a)(2), are not "greater than necessary," 18 U.S.C. § 3553(a), the sentence of imprisonment in this case should be reduced to time served for extraordinary and compelling reasons, allowing Mr. Al-Kassar to be deported to Syria. See *McGraw*, supra, at 16 (stating that based on the defendant's age and health considerations, further incarceration would be greater than necessary.)

**Other Cases Where Compassionate Release was Recently Granted**

In addition to the cases cited above, where the motions for release were granted, there are many other recent cases where courts have granted compassionate release applications based on age and medical conditions. *United States v. Ebbers*, 2020 US Dist. LEXIS 3746 (SDNY 2020); *United States v. Gray*,

29

2019 WL 4572816 (SDIN 2020); *United States v. York*, 2019 US Dist. LEXIS 119768 (EDTN 2019); *United States v. Beck*, 2019 US Dist. LEXIS 108542 (MDNC 2019); *United States v. Perez*, 2020 U.S. Dist. LEXIS 45635 (D KS 2020); *United States v. Johns*, 2019 US Dist. LEXIS 107850 (DAZ 2019); *United States v. Karr*, 2020 US Dist. LEXIS 27149 (EDKY 2020); *United States v. Sotelo*, 2019 US Dist. LEXIS 135051 (EDPA 2019); *United States v. Schmitt*, 2020 US Dist. LEXIS 2832 (NDIA 2020); *United States v. Gasich*, 2019 WL 4261614 (NDIN 2019); *United States v. Wolcott*, 2:08-cr-00013 (MDTN 2020.)

## CONCLUSION

For the foregoing reasons, this Court should reduce Monzer Al-Kassar's sentence to time served based on extraordinary and compelling reasons of the risk posed by COVID19, as well as due to his age and health as provided in USSG 1B1.13 Application Note 1(A) and (B).

Dated: April 3, 2020

Respectfully submitted,

*Kathy Manley*
KATHY MANLEY
Attorney for *Monzer Al-Kassar*
NDNY Bar Roll No. 105730
26 Dinmore Road
Selkirk, NY 12158
(518) 635-4005 (phone and fax)
Mkathy1296@gmail.com