UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

MONZER AL KASSAR,

Defendants.

---

07-cr-354-01(JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

The Court has received another *pro se* motion for sentence reduction from defendant Monzer Al Kassar, asking to reduce his 360-month sentence to time served under what is colloquially called the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A).

Provided that the statutory exhaustion requirements were met, the Court may reduce a defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the 18 U.S.C. § 3553(a) factors weigh in favor of reduction. See United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021). For the reasons set forth below, the Court finds that Al Kassar has failed to satisfy either of the requirements, let alone both.

I.  Extraordinary and Compelling Circumstances

Al Kassar submitted a request for compassion release to the Warden of USP Florence on March 26, 2024. In his request, he asked for release on grounds of (1) medical conditions, (2) age, and

1

(3) time already served in prison. Def's Mot., Exs. 1-3. (Dkt. 215). On May 26, 2024 (*i.e.*, more than thirty days later), he filed a motion in this court. Those claims for release are thus properly before this court. See United States v. Haney, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020) (Section 3582(c)(1)(A) requires petitioner "either to exhaust administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion." (emphasis in original))

In this motion, Al Kassar attaches documents indicating that he suffers from several chronic ailments, most pertinently balance and back problems, type 2 diabetes, hypertension, and cataract problems. These are ongoing problems of old age, but none rises to a level of "terminal illness" or serious impairments "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility[.]" U.S.S.G. § 1B1.13(b)(1). If anything, the documentation submitted by Al Kassar shows that he is receiving substantial ongoing treatment from the Federal Bureau of Prisons ("BOP"), including medical examinations, tests, and medication that address each of the illnesses, Def. Mot., Exs. 4-16. See United States v. Andrews, 2024 WL 2959310, at *4 (S.D.N.Y. June 11, 2024) ("[W]here defendants have had serious medical conditions but are receiving appropriate care within a BOP facility . . . defendants have not carried their burden of proving extraordinary and compelling

2

reasons for release."); see also United States v. Borelli, 2021 WL 2228075, at *2-4 (S.D.N.Y. June 2, 2021) (concluding no extraordinary and compelling circumstances existed where a 72-year-old defendant suffered from diabetes, cataracts, and heart disease where defendant did not offer evidence that the conditions are not managed by BOP). While Al Kassar also alleges that he suffers from prostate and colon cancer, which, if confirmed, would potentially qualify as "terminal illness" sufficient to show "extraordinary circumstances," he has submitted no evidence to support this assertion. The Court therefore finds that there are no "extraordinary or compelling" medical circumstances warranting his release.

Al Kassar next argues that even if he is receiving adequate medical treatment, his medical conditions, in combination with his age, are still sufficient to qualify as "extraordinary circumstances." But under the statute, "extraordinary" age-related circumstances exist only where the defendant: "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). Al Kassar qualifies for (A) and (C) as he is eighty years old and has served seventeen years of his thirty-year sentence, Def's Mot. at 11, but he fails to satisfy (B). On the contrary, the records shows that the BOP is

3

actively managing his age-related conditions so as to prevent the "serious deterioration" required under the statute. For example, he received a referral for cataract surgery for his eye condition. Def's Mot., Ex. 7. And for his other conditions, he has received ongoing testing, treatment, medication, and cell accommodation, id., Ex. 4.

Al Kassar also argues that his "unusually long" sentence of thirty years is by itself "extraordinary circumstance" justifying release. In this regard, defendant cites United States v. Williams, No. 09 CR 558, 2023 WL 4785286 (S.D.N.Y. July 27, 2023) and United States v. Cromitie, 2024 WL 216540 (S.D.N.Y. Jan. 19, 2024), but neither case is analogous to the facts of this case. Both Williams and Cromtie involved co-defendants convicted at trial on charges related to multiple conspiracies, including conspiracy to acquire and use anti-aircraft missiles and to shoot down military aircraft, and sentenced to the mandatory minimum of 25 years. Williams, 2023 WL 4785286, at *1; Cromitie, 2024 WL 216540, at *1. The court in those cases granted the defendants' compassion release motions because evidence presented at trial made it clear that the defendants were not terrorists but just "impoverished small time grifters and drug users/street level dealers who could use some money." Williams, 2023 WL 4785286, at *3; Cromitie, 2024 WL 216540, at *3. By contrast, Al Kassar was a sophisticated, long-time international weapons trafficker. United States v. Al Kassar, 582

4

F. Supp. 2d 488, 491 (S.D.N.Y. 2008). He was convicted in this case of very serious crimes, including conspiracies to kill U.S. citizens, officers and/or employees, acquiring and exporting anti-aircraft missiles, and knowingly providing material support to a known terrorist organization through the proposed sale of thousands of weapons to this terrorist group. United States v. Al Kassar, 660 F.3d 108, 115 (2d Cir. 2011). In doing so, he not only knew that the weapons would be used against the United States, but also expressed enthusiasm about this cause. The resulting thirty-year sentence, just five years above the mandatory minimum and where the applicable sentencing range was life in prison, was not unusually long. While it is true that the agreement pursuant to which defendant was extradited from Spain provided that the government would not seek a sentence of death or life imprisonment, the lesser sentence defendant received was under the situation quite lenient.

Finally, under the rubric of "Other Reasons," U.S.S.G. § 1B1.13(b)(5), Al Kassar also contends that his release is warranted because of what he claims was "clear & complete miscarriage of justice and fundamental unfairness" as a result of him allegedly being "set up" by the United States government and its agents. Def's Mot. at 12-13. This argument was not raised in Al Kassar's application to the Warden and is thus waived on exhaustion grounds. See Def's Mot., Exs. 1-3. And in any case, the

5

Court finds that the argument is frivolous, as the evidence at trial demonstrated that defendant was a knowing, even avid, member of each of charged conspiracies.

Finally, defendant also cites his "rehabilitation" as a factor for release, but the law is clear that rehabilitation, on its own, is not sufficient for a sentence reduction. U.S.S.G. § 1B1.13. Moreover, there is no evidence that Al Kassar is rehabilitated in the slightest.

II.  The 18 U.S.C. § 3553(a) Factors

Even if, contrary to fact, Al Kassar had demonstrated extraordinary circumstances warranting his release, sentencing factors in 18 U.S.C. § 3553(a) counsel against granting this motion. The Court explained in its denial of Al Kassar's prior compassionate release motion filed in 2020 that the violent circumstances of his crimes *alone* warrant a denial of sentence reduction. See United States v. Al Kassar, 2020 WL 4813199 (S.D.N.Y. Aug. 19, 2020), aff'd, 850 F. App'x 815 (2d Cir. 2021). Then as now, the evidence on the record is "totally overwhelming" and shows that Al Kassar "knowingly and intentionally, and without any hesitation . . . entered into an arrangement to sell huge quantities of the most serious weapons to what [he] believed was a terrorist organization" that intended "use those weapons, among other things, to kill Americans and wreak havoc." Id.

6

```
New York, NY                          _____
October 11, 2024                      JED S. RAKOFF, U.S.D.J
```